**Charles MITCHELL, Petitioner,**

v.

**Gerald MASON, Respondent.**

No. 98–71338.

United States District Court,
E.D. Michigan,
Southern Division.

July 19, 1999.

Rolf E. Berg, Detroit, MI, for Petitioner.

Jeffrey W. Caminsky, Detroit, MI, for Respondant.

## ORDER AND OPINION GRANTING HABEAS CORPUS RELIEF AND REJECTING THE MAGISTRATE'S REPORT AND RECOMMENDATION (DOCKET # 29)

TARNOW, District Judge.

### I. Introduction[1]

Petitioner, Charlie Lee Mitchell filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that the trial judge denied him the constitutional guarantee to be represented by counsel as provided for by the Sixth Amendment. Mr. Mitchell informed the court several times prior to the start of his trial that he had never met privately with his attorney.[2] A week and half before trial was scheduled to begin, Mr. Mitchell requested that the court assign him new counsel to provide an opportunity to confer with a practicing and responsive attorney prior to and during his trial for first degree murder.

Having taken Mr. Mitchell's request under advisement to await the reinstatement of the attorney, the trial judge revisited the request with the attorney present in the courtroom. The trial judge informed Mr. Mitchell that subjective dissatisfaction with counsel does not require the court to assign a new attorney and, therefore, denied Mr. Mitchell's request. The trial court was correct, a subjective test of a defendant's satisfaction with counsel does not dictate an order for new counsel.

However, the attorney's neglect of his client met the objective test of a denial of counsel. The Court grants Mr. Mitchell's petition of habeas corpus, because the state trial court committed constitutional error denying his request for new counsel.

## II. Background

Charged with first-degree murder, Mr. Mitchell faced a jury trial without ever having spoken with his attorney in private. The only conversations that took place between the two of them occurred in the bullpen of Recorder's Court, Detroit, Michigan, certainly not a private setting. Defense lawyers can meet with their clients in the bullpen, but the presence of others chills any meaningful or confidential exchange. In addition to the exposed atmosphere, Mr. Mitchell, without his needed hearing aid, could only understand about half of the things Mr. Evelyn said to him in the bullpen. Even these harried conversations were early in the process. From the delivery of discovery materials to Mr. Mitchell until the time of trial, a period of approximately six months, the attorney never communicated with his client.

Mr. Mitchell informed the system by writing six letters explaining the difficulties he endured as he tried to garner meaningful and private communication with his attorney of record, two letters to Judge Farmer, two to Judge Roberson, one to the clerk and one to the Attorney Grievance Commission. A week or so before the commencement of the trial and during the attorney's suspension period, Mr. Mitchell appeared before the trial judge *in pro per* to ask the court for withdrawal of counsel. After Mr. Mitchell told of the absence of communication with his attorney, the judge took the motion under advisement until he had a chance to

---

1. Law Clerk Emily Klarman provided quality research assistance.

2. The State Bar of Michigan had suspended his attorney from practice for thirty (30) days one month prior to the commencement of Mr. Mitchell's trial. This is not the basis of this court's ruling.

reexamine the issue with both the attorney and client present.

When trial began, Mr. Mitchell renewed his motion for withdrawal of counsel; counsel had not visited him the prior evening, a meeting ordered by the judge. The court recommended an adjournment of the trial at one o'clock that day to give Mr. Mitchell the opportunity to discuss matters with counsel. Mr. Mitchell, not satisfied with the proposed solution, posited the simple, yet poignant question of, "How can I make it all the way to trial when Mr. Evelyn has never heard my true side of the story?"

Counsel suggested that should Mr. Mitchell have discontent with counsel in the future, the court could afford him an opportunity to reassess the motion. The judge responded,

> "I will listen to him at any time, but I don't want to mislead you with the impression that just because you're still dissatisfied with your attorney that the Court is going to discontinue the trial and appoint new counsel."

The trial judge denied Mr. Mitchell's motion for new counsel without prejudice and Mr. Mitchell did not raise the issue again. Counsel proceeded to represent Mr. Mitchell at the trial, cross-examining witnesses and addressing the jury. At the conclusion of the trial, the jury returned with a guilty verdict for second-degree murder. The judge sentenced Mr. Mitchell to 10–15 years of imprisonment.

Mr. Mitchell appealed as of right to the Michigan Court of Appeals and in an unpublished *per curiam* opinion, dated January 5, 1994, the court affirmed the conviction. The Michigan Supreme Court granted leave to appeal the decision. The majority held in part that no deprivation of effective assistance of counsel occurred, because the Court did not consider trial preparation a critical state of the proceedings. *People v. Mitchell*, 454 Mich. 145, 166, 560 N.W.2d 600 (1997). The majority focused on counsel's performance at trial, not the relationship between Mr. Mitchell and his attorney. *Id.* "If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his clients' evaluation of his performance." *Id.* at 167, 560 N.W.2d 600 (quoting *United States v. Cronic*, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).

The dissent, however, would have ruled that counsel's failure to ever interview his client translated into a *per se* violation of Mr. Mitchell's Sixth Amendment rights. The case should not have been analyzed under an ineffective assistance of counsel doctrine. The "facts of this case justify a presumption of ineffectiveness without inquiry into actual performance or prejudice." *Id.* at 178, 560 N.W.2d 600. The dissent, in criticism of the majority's narrow view of the facts, expanded the analysis from a focus on the attorney's one month suspension to the absence of communication between attorney and client during the entire pretrial preparation period of approximately six months. The dissent analyzed the facts under a totality of the circumstances' test, including the thirty-day suspension, the gravity of the charge, all of Mr. Mitchell's unheeded attempts to arrange a private meeting with Mr. Evelyn and the court's refusal of Mr. Mitchell's timely request for substitution of counsel. The dissent concluded that Mr. Mitchell had been denied his Sixth Amendment right *per se*. *Mitchell* at 193, 560 N.W.2d 600.

### III. Standard of Review

The Petitioner's application is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) because his application was filed after April 26, 1996.

28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir.1997); *cert den* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). Habeas relief cannot be granted unless the state court's legal decision was contrary to, or was an unreasonable application of, "clearly established" United States Supreme Court law or the state court's application of the law to the facts was an "unreasonable determination of the facts in light of the evidence ...". *Id.* at (d)(1)-(2).

■ The factual determinations of a state court are presumed correct unless rebutted by convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. *Warren v. Smith,* 161 F.3d 358, 360–361 (6th Cir.1998); 28 U.S.C. § 2254(e)(1).

■ The Sixth Circuit has recently adopted a standard of review in *Nevers v. Killinger,* 169 F.3d 352, 1999 WL 97993 (6th Cir.1999) *cert. denied,* —— S.Ct.——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999). The Sixth Circuit held that the deference to the state courts' judgments required under the AEDPA would be achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be debatable among reasonable jurists if it is so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes. *See also Tucker v. Prelesnik,* 181 F.3d 747, 753–54 (6th Cir.1999) (discussing the *Nevers* deci-

sion); *Lakin v. Stine,* 44 F.Supp.2d 897 (E.D.Mich.1999);*French v. Jones,* 41 F.Supp.2d 726 (E.D.Mich.1999).

## IV. Analysis

■ The trial court denied Mr. Mitchell's right to counsel as guaranteed by the Sixth Amendment to the U.S. Constitution, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The actual or constructive denial of counsel can never be considered harmless error, because the right to counsel is core to our system. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (quoting from *Chapman v. State of California,* 386 U.S. 18, 23, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967)).

■ As the trial judge correctly stated, no weight is attached to a defendant's expression of satisfaction or dissatisfaction with counsel. *United States v. Cronic,* 466 U.S. 648, 657, n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), *Ward v. United States,* 995 F.2d 1317, 1321 (1993). Instead, an objective reasonableness test is applied to counsel's effective advocacy. *Id.*

■ Giving form to the relationship between attorney and client, the Supreme Court held that critical to the attorney's representation, communication between the two must exist. *Geders v. United States,* 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). The denial of the opportunity to confer with an attorney results in reversible constitutional error. *Id.*

The great lengths to which the system extends to protect attorney-client communication demonstrate the importance of conversation between attorney and client in the legal world. *Swidler & Berlin, et al. v. United States,* 524 U.S. 399, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (Attorney-client privilege survives the death of the client). Habeas relief has been granted in similar circumstances where a petitioner had been denied the ability to speak in

private with his attorney and then forced to endure trial. *See Lakin v. Stine,* 44 F.Supp.2d 897 (1999). Meaningful, confidential and private conversation creates the attorney-client relationship, without communication the attorney can only posture as one, the communication derives an attorney, a necessary element composing a lawyer. *Id.*

 Mr. Mitchell's inability to secure private communication with counsel prior to trial rendered him without representation at his trial in violation of the Sixth Amendment. Pretrial preparation is a critical stage of the proceeding. *Geders* and *Lakin, supra.* The trial judge throughout the renewed motion to dismiss counsel kept voicing his concern that the trial had begun and he did not want to postpone trial. The repetition of the statements implied that the delay in Mr. Mitchell's request for new counsel was Mr. Mitchell's fault. Such a conclusion, however, could not be further from the truth, because Mr. Mitchell made substantial efforts prior to the commencement of trial to secure responsive counsel for himself.

He called his attorney collect in order to converse with him, but the attorney would not accept the charges. Mr. Mitchell had his mother phone and stop by the attorney's office in hopes of capturing some response from the attorney, but to no avail. Mr. Mitchell wrote six letters to the courts in an attempt to inform the system of the fact that counsel never met with him once to discuss the case. Mr. Evelyn broke promises to meet with Mr. Mitchell on many occasions, including failing to meet with him the night before the beginning of trial. A meeting that had been ordered by the trial judge. Mr. Mitchell brought a motion for appointment of new counsel a week and half before the trial was scheduled to begin. This was held in abeyance by the trial judge to the day of trial, not Mr. Mitchell. Thus, the trial judge was aware of all of Mr. Mitchell's efforts. He should not have blamed Mr. Mitchell for his delay in raising the issue.

Respondent conceded the factual underpinnings that no private communication took place between Mr. Mitchell and Mr. Evelyn, but argued that the Sixth Amendment does not guarantee such communication. Further, that pretrial preparation should not be considered a critical part of the proceeding. Respondent concluded that the contours of the Sixth Amendment have not been held to embody the chance to confer one-on-one with an attorney, and presents a case of first impression for the court. · As such habeas relief cannot be granted for non-established law, only for the denial of a known federal or constitutional right.

The court holds that the Sixth Amendment does secure communication between attorney and client. It is not a new rule of law. See, *Geders, supra.* As the Supreme Court held in *Geders,* for an attorney-client relationship to exist, the two must communicate. Without the crucial condition of conversation between them a constitutional violation occurs. Given Supreme Court precedent that confidential and meaningful communication is critical to an attorney relationship, the fact that Mr. Evelyn never once spoke in private with Mr. Mitchell prior to a murder trial translates into a denial of Mr. Mitchell's right to counsel.

The reduction in the charge from first-degree murder to second degree is irrelevant to the instant analysis, because as the dissenting opinion of the Michigan Supreme Court in Mr. Mitchell's appeal indicated, the fact that an attorney can put on a good show in court does not mean that a defendant had been provided counsel. Furthermore, one cannot speculate as to what takes place behind the closed jury door. It may be that an attorney who had put forth a modicum of pretrial preparation would have been able to obtain an acquittal for the client. The jury's lowering of the charge does not provide a useful barometer as to Mr. Evelyn's representation of Mr. Mitchell, because no one knows why or how the jury decided to find Mr.

Mitchell guilty of second-degree murder, but not first degree. Consider also the fact that Mr. Mitchell's co-defendant, Mr. Lamont Mason, tried concurrently, but with a separate jury was acquitted of all charges by his jury. It is anybody's guess as to what the result would have been for Mr. Mitchell had he been given adequate representation at his trial.

In summary, prior to trial, Mr. Mitchell attempted many times to speak with his attorney in private, but could not. Once informed of this reality, the trial court should have taken proper steps to rectify the problem. For example, the judge could have removed Mr. Evelyn, found him in contempt, fined him and appointed new counsel, as Judge Vonda R. Evans for the Wayne Circuit Court did on the day of trial to a defense attorney, who failed to speak with his client for a period of 10 weeks. *See* David Shepardson, *Court Delays Trial in Cop's Killing*, The Detroit News, June 8, 1999. The trial judge's failure to correct the problem resulted in a denial of Mr. Mitchell's right to counsel. Therefore, the court grants habeas relief.

## V. Conclusion

IT IS HEREBY ORDERED that Magistrate's Report and Recommendation is rejected and the Petitioner's application for writ of habeas corpus is conditionally granted. Unless the state takes action to afford Petitioner a new trial within ninety (90) days of the date of the July 8, 1999 judgment, he may apply for a writ ordering respondent to vacate the sentence for the conviction.