Alejo GONZALEZ, Petitioner,

v.

Thomas PHILLIPS, Respondent.

No. 98–CV–75600.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 21, 2001.

Alejo Gonzalez, Jackson, MI, pro se.

Rubina S. Mustafa, State Appellate Defender Office, Detroit, MI, for Alejo Gonzalez.

Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Thomas Phillips.

### OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

### I. *Introduction*

Petitioner Alejo Gonzalez ("Gonzalez") is currently incarcerated at the Charles Egeler Correctional Facility in Jackson, Michigan. Gonzalez, through his attorney Rubina S. Mustafa, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Because the Court finds that Gonzalez received ineffective assistance of trial counsel, was constructively denied the assistance of counsel, and was deprived of his Sixth Amendment right to confront witnesses against him, the Court grants the petition.

### II. *Facts*

Petitioner is incarcerated pursuant to 1992 convictions in Genesee County Circuit Court for conspiracy to deliver over 650

---

**1.** Staff Attorney Mary Beth Collery provided quality research assistance.

grams of cocaine and delivery of over 650 grams of cocaine. For a detailed recitation of the facts that led to Gonzalez's conviction, the Court directs the reader to its June 5, 2001 Opinion and Order Granting Evidentiary Hearing. *Gonzalez v. Phillips,* 147 F.Supp.2d 791 (E.D.Mich. 2001). This opinion will summarize the testimony presented at the evidentiary hearing conducted in this Court on October 1, 2001.

Three witnesses testified at the October 1, 2001 evidentiary hearing: the trial attorney, Cyril Hall; the interpreter, Marisol Ortiz–Garcia, and Petitioner. Cyril Hall, had very little specific recollection of his representation of Gonzalez. He did not specifically recall when he was retained to represent Gonzalez. However, he noted that his associate, Randall Upshaw represented Gonzalez's at the preliminary examination on his behalf. Although an interpreter was used at the preliminary examination, Attorney Hall did not recall having any conversations with Gonzalez or Attorney Upshaw regarding whether an interpreter was necessary at trial. At the preliminary examination, Maria Wallace served as a Spanish language interpreter for Gonzalez.

Attorney Hall recalled that the first time he spoke to Gonzalez he brought a Spanish language interpreter, Marisol Ortiz–Gracey, with him. He recalled that he communicated with Gonzalez through Ms. Ortiz during that first meeting. Attorney Hall also recalled that Ms. Ortiz–Gracey interpreted for him on his second meeting with Gonzalez. Attorney Hall testified that if he had been convinced that Gonzalez could not understand the trial court proceedings, he would have requested that an interpreter be appointed for him He had no specific recollection of reaching the conclusion that Gonzalez did not need an interpreter.

During the evidentiary hearing, Marisol Ortiz–Gracey testified that Attorney Hall contacted her and asked her to serve as a bilingual interpreter for Gonzalez. She served as an interpreter several times when Attorney Hall met with Gonzalez at the Genesee County Jail. She also recalled attending court one day, but could not remember any details related to those proceedings. Ms. Ortiz–Gracey testified that she felt that Gonzalez's ability to understand English was very limited. Ms. Ortiz–Gracey further testified that, during those meetings, no communication occurred between Attorney Hall and Gonzalez without her assistance.

Finally, Gonzalez testified at the evidentiary hearing. He testified that, prior to being incarcerated, the only formal education he received was in Cuba, where he received no English language education. He arrived in the United States in March 1980, at the age of 17. After arriving in the United States, Gonzalez was employed at various jobs, none of which required him to read, speak or write English.

Gonzalez testified that on the first day of trial, he indicated to Attorney Hall that he did not understand what was happening. Gonzalez testified that throughout the trial he did not understand the proceedings, because he could not understand the language. He stated that, initially, he did not even realize that this was his trial. Gonzalez had seen Ms. Ortiz–Gracey in the courtroom and thought she would interpret for him, but she did not. He testified that he would have testified at trial, had an interpreter been available to him.

The trial judge, Honorable Judith Fullerton, provided an affidavit that she saw no indication during the arraignment, trial or sentencing that Gonzalez had difficultly understanding the English language, nor was she informed by Gonzalez or his attorney of any difficulty. The presentence

report had the following: "[Gonzalez] only attended school until age 16 and due to his Cuban upbringing, seems to have little grasp of the English language."

### III. *Procedural History*

The complete procedural history is set forth in the Court's June 5, 2001 Opinion and Order Granting Evidentiary Hearing. *Gonzalez*, 147 F.Supp.2d 791. In his petition for a writ of habeas corpus, Petitioner presents the following claims:

I. Was due process violated where the court precluded cross-examination of a key witness as to bias?

II. Was the court's failure to provide Petitioner with an interpreter at trial, where Petitioner did not speak or understand English, reversible error?

III. Was defense counsel ineffective in failing to move for appointment of an interpreter for Petitioner at trial, in failing to bring out the entire bargain for the accomplices' testimony and the fact that they all lied about it, and in failing to utilize Petitioner's testimony where there was no other support for his defense?

On June 5, 2001, this Court issued an Opinion and Order Granting Evidentiary Hearing regarding the following issues: (1) whether Gonzalez spoke and understood English adequately at the time of his trial to intelligently participate in his own defense and protect his right of confrontation without the services of a competent interpreter, (2) whether the trial judge deprived Gonzalez of his constitutional rights to confrontation, meaningful presence at his trial, meaningful participation in his defense, and a fundamentally fair trial by failing to appoint Gonzalez an interpreter, or advise him of his right to an interpreter, (3) whether lack of an interpreter resulted in actual or constructive denial of counsel, and (4) whether trial counsel was ineffective.

An evidentiary hearing was held on October 1, 2001.

### IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). Additionally, this Court must presume the correctness of state court factual determi-

nations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 1521. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

## V. *Ineffective Assistance of Trial Counsel*

■ Gonzalez's first ground for habeas corpus relief is that his trial attorney was ineffective for failing to request an interpreter during his trial. Gonzalez, whose first language is Spanish, asserts he has very limited English language abilities and that his attorney knew or should have known that he required the services of an interpreter. Gonzalez testified that, during the trial, he indicated to his attorney that he did not understand the proceedings.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

---

**2.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the relia-

bility of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied* 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997).

The last state court to issue a reasoned opinion regarding Gonzalez's claim of ineffective assistance of counsel, the Michigan Court of Appeals, held, in pertinent part:

... Defendant maintains that counsel was ineffective.... To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the alleged deficiencies were prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Tommolino,* 187 Mich. App. 14, 466 N.W.2d 315 (1991).

Defendant contends that his trial counsel was ineffective because he failed to cross-examine witnesses adequately concerning plea bargains, because he failed to procure an interpreter for defendant and because he failed to provide a substantial defense for defendant. The record in this case does not support defendant's claims. We are neither persuaded that there was deficient performance on counsel's part nor that "but for counsel's alleged failure[s]" the outcome of the trial would have been different. *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557 (1994). We will not substitute our judgment for that of counsel regarding trial strategy, nor will we assess counsel's competence with the benefit of hindsight. *People v. Barnett,* 163 Mich.App. 331, 338, 414 N.W.2d 378 (1987).

*People v. Gonzalez,* slip op. at 4.

The Court concludes that the Michigan Court of Appeals' decision was an unreasonable application of Supreme Court precedent. Based upon a review of the state court record and the testimony provided at the October 1, 2001 evidentiary hearing in

this Court, the Court concludes that Attorney Hall should have requested an interpreter for his client and that his failure to do so fell outside the range of professionally competent assistance. In order to receive a fair trial and to assist in his own defense, a defendant must be able to understand the proceedings against him. If a defendant does not understand those proceedings and the defendant's attorney is aware or should be aware of the defendant's inability to understand the proceedings, it is incumbent upon that attorney to act on his or her client's behalf by requesting an interpreter. This Court concludes that the record clearly shows that Petitioner had insufficient English language abilities to understand the proceedings against him and that his attorney was aware or should have been aware of his English language limitations.

First, the Court looks to Attorney Hall's testimony regarding his representation of Gonzalez. Attorney Hall testified that Gonzalez was referred to him as a client by an acquaintance of Gonzalez, identified by Attorney Hall as "Luis." Attorney Hall testified that the first time he met with Gonzalez, he was accompanied by Spanish language interpreter Marisol Ortiz–Gracey. He brought Ms. Ortiz–Gracey with him because he had been advised by Luis that Gonzalez had limited English language abilities. Attorney Hall recalled that during that first meeting he spoke with Gonzalez through Ms. Ortiz–Gracey.

Attorney Hall had no independent recollection as to whether he was retained prior to or after the preliminary examination. After reviewing a copy of the preliminary examination transcript, Attorney Hall testified that Attorney Randall Upshaw represented Gonzalez at the preliminary examination on behalf of Attorney Hall. Attorney Upshaw was employed by Attorney Hall at that time. The preliminary examination transcript reflects that Attorney Upshaw told the court that Gonzalez required the assistance of an interpreter and that Interpreter Maria Wallace was provided to assist Gonzalez. Attorney Hall testified that he had no recollection of discussing Gonzalez's English language comprehension with Attorney Upshaw. Attorney Hall had no recollection as to whether or not Gonzalez tapped him on the leg during the trial, indicating to him that he did not understand the proceedings.

Next, Petitioner called Marisol Ortiz–Gracey to testify. The Court finds her testimony to be particularly credible and informative. Ms. Ortiz–Gracey testified that she was contacted by Attorney Hall to serve as a bilingual translator for Gonzalez. She recalled that she met with Gonzalez and Attorney Hall on more than one occasion at the Genesee County Jail. Ms. Ortiz–Gracey also testified that she attended one court proceeding, but did not recall the details of that proceeding.[3] She testified that, based upon these meetings she did not believe that Petitioner was able to understand much English. She further testified that Attorney Hall and Gonzalez did not communicate without her assistance during their meetings. Finally, Ms. Ortiz–Gracey testified that she did not believe that Attorney Hall would have been able to communicate with Gonzalez without her assistance.

3. Based upon the record before the Court and the testimony provided at the evidentiary hearing, the Court cannot determine what proceeding Ms. Ortiz–Gracey attended. The absence of that information, however, does not bear upon the Court's ruling. Salient to the Court's analysis of Gonzalez's habeas corpus petition is the uncontroverted fact that neither Ms. Ortiz–Gracey nor any other individual served as an interpreter for Gonzalez during his trial.

Gonzalez testified at the evidentiary hearing that his only formal education was in Cuba, where he received no English language education. He arrived in the United States in 1980. After arriving in the United States, he held various jobs, none of which required him to read, speak or write English. Gonzalez further testified that, on the first day of his trial, he saw Ms. Ortiz–Gracey sitting in the gallery. He assumed that she would translate for him. When she did not, Gonzalez indicated to Attorney Hall that he did not understand the proceedings. Gonzalez testified that, initially, he did not even realize that his was the trial that was proceeding that day. He further testified that, had an interpreter been provided for him, he would have testified in his own defense. Having had an opportunity to observe his demeanor and manner, the Court found Gonzalez's testimony during the evidentiary hearing to be credible.

Gonzalez's appellate attorney F. Michael Schuck also supports Petitioner's claim that he has a limited understanding of the English language. On direct appeal in state court, Gonzalez filed a motion to remand in the Michigan Court of Appeals requesting a remand to the trial court for a hearing regarding his claims that the trial court erred in failing to provide an interpreter and that his trial attorney was ineffective. In support of this motion, Gonzalez filed an affidavit from appellate attorney Schuck, in which Attorney Schuck attested that Petitioner did not have a sufficient understanding of the English language to allow him to comprehend the intricacies of a criminal trial without the assistance of an interpreter.

Finally, the Presentence Investigation Report summarizes and corroborates Gonzalez's limited education and limited English language ability: "[Gonzalez] only attended school until age 16 and due to his Cuban upbringing, seems to have little grasp of the English language."

In its opinion affirming Petitioner's convictions, the Michigan Court of Appeals cited Gonzalez's several exchanges with the trial court as evidence that the trial court did not err in failing to *sua sponte* appoint an interpreter. This Court need not address whether the Court of Appeals decision in this regard was reasonable. But the Court does note that while the exchanges may have been insufficient to alert the trial court that she should *sua sponte* appoint an interpreter, the exchanges do not absolve Attorney Hall of his duty to request an interpreter for his client. First, the exchanges between the trial court and Petitioner at his arraignment were quite limited, consisting of Gonzalez giving single-word "yes" answers to a series of the trial judge's questions. These exchanges were insufficient to refute all the other evidence before Attorney Hall that Gonzalez did not understand English. Second, Attorney Hall was on notice that his client had limited English language abilities. His own actions reflect that he deemed an interpreter necessary for his private conversations with Gonzalez. It was equally as important that Gonzalez be able to communicate with his attorney during trial as it was important that he be able to communicate with his attorney during trial preparations. According to Ms. Ortiz–Gracey's testimony, her presence was not requested simply so she could interpret an occasional word or phrase. Instead, she translated the entire conversations between Attorney Hall and Gonzalez. Attorney Hall never provided an explanation as to why he deemed an interpreter necessary for several trial preparation meetings, but not for the trial itself. Thus, the Court holds that Attorney Hall's failure to obtain an interpreter falls outside the range of reasonably competent professional assistance.

Next the Court turns to the issue of whether or not Petitioner was prejudiced by this error. As an initial matter, the Court observes that, notwithstanding trial counsel's failure to request an interpreter at trial, this issue could have been addressed at the trial level at the prosecutor's initiative. While two different assistant prosecutors from the Flint Prosecutor's Office attended the preliminary examination and trial, Gonzalez's attorney at the preliminary examination stated, in open court, that Gonzalez required the assistance of an interpreter and one was provided. Thus, the prosecutor's office had actual notice that Gonzalez required the services of an interpreter. *Giglio v. U.S.*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

■ To determine whether Petitioner was prejudiced by his attorney's error, the Court considers whether the error has "undermine[d] confidence in the outcome" of the trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The Court first considers the evidence presented at trial. The Michigan Court of Appeals characterized the evidence against him as "ample." The Court finds this characterization to be clearly erroneous. As support for its conclusion that "ample" evidence was presented, the Michigan Court of Appeals states that "the police surveillance team saw defendant transfer the package of drugs to its informant." *People v. Gonzalez,* slip op. at 2. This statement misstates the evidence presented. A "team" of surveillance officers did not testify that they saw Gonzalez transfer the narcotics to the informant. Most of the police surveillance officers who testified did not observe the transfer of drugs to the informant. In fact, of the fifteen police officers and agents who testified, thirteen did not see the actual transfer of narcotics. Of the two that did, Officer Cameron Hanke testified that, from a distance of 75–100 yards, he observed Gonzalez transfer the drugs. Police Officer Lynn Sanders testified that she saw a black male dressed all in white transfer the narcotics. At trial, she identified Gonzalez as that individual.

In addition, David Osborn and Sofia Garcia testified that the cocaine was delivered by Ernesto Galarza, not Petitioner. Police Officer Antonio Mata testified that he interviewed Galarza twice. In the first interview, Galarza told Officer Mata that Osborn delivered the cocaine to Stewart. In the second interview, Galarza changed his story, telling Officer Mata that Petitioner delivered the cocaine to Stewart. Moreover, numerous witnesses gave contradictory testimony as to whether the person who transferred the drugs was wearing light- or dark-colored clothing and whether Gonzalez was wearing light- or dark-colored clothing.

While this Court recognizes there was sufficient evidence to support the conviction, there was also enough contradictory evidence to shake the Court's confidence in the outcome of the trial. Having concluded that Gonzalez required an interpreter to understand the proceedings against him and to assist in his own defense and that the evidence against Gonzalez was not overwhelming, the Court's confidence in the outcome of the trial is seriously undermined. Accordingly, the Court concludes that Gonzales was prejudiced by his attorney's ineffective representation and that the Michigan Court of Appeals decision to the contrary was an unreasonable application of Supreme Court precedent.

■ Alternatively, under the analysis of *U.S. v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), this case is very close to being one where prejudice is presumed. See also, *Mitchell v. Mason,* 257 F.3d 554 (6th Cir., 2001). The Court finds that this case also warrants habeas corpus relief under the *Cronic* analysis. Indeed, depriving Gonzalez of an interpret-

er places his case closer to *Cronic* than *Strickland* on the continuum of ineffective assistance of counsel claims.

In *Cronic,* 466 U.S. 648, 104 S.Ct. 2039 (1984), the United States Supreme Court held:

> There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.... Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

*Id.* at 658–59, 104 S.Ct. 2039.

The right to counsel encompasses the right to confer with one's attorney, and the denial of the right to confer is a constitutional violation. *Geders v. U.S.,* 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). This Court has granted habeas corpus relief where a petitioner was denied the opportunity to meet privately with his attorney, holding that "meaningful, confidential, and private conversation creates the attorney-client relationship, without communication the attorney can only posture as one ..." *Mitchell v. Mason,* 60 F.Supp.2d 655, 659 (E.D.Mich.1999), *aff'd*

257 F.3d 554 (2001). Similarly, where a defendant is denied the opportunity to meet with counsel during breaks in the trial court proceedings, the Supreme Court has found that such a denial results in a violation of the right to the assistance of counsel. *Geders,* 425 U.S. at 88–89, 96 S.Ct. 1330.

In the pending case, Gonzalez was deprived his right to communicate with his attorney. Where he and his attorney could not communicate in a shared language, the Court sees no way in which the two could have a meaningful attorney-client relationship during trial guaranteed by the Sixth Amendment. Thus, the *Cronic* presumption of prejudice applies. The Michigan Court of Appeals opinion affirming Gonzalez's conviction, therefore, was an unreasonable application of Supreme Court precedent.

In addition, a violation of the right to be present at one's own trial is a structural defect that is yet another separate basis for granting relief. *See Arizona v. Fulminante,* 499 U.S. 279, 309–310, 111 S.Ct. 1246, 113 L.Ed.2d 302.[4] A person who is physically present, but cannot understand the proceedings has been denied due process. *See Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In *Drope,* the Supreme Court recognized that "a person whose mental condition is such that he lacks the capacity to understand

**4.** The Court recognizes there exists some support for the application of a harmless error analysis when there is a violation of the right to be present. *See* Wayne R. LaFave et al., Criminal Procedure § 24.2(b) (1999) (applying harmless error analysis where defendant absent for a brief period). However, application of the harmless error analysis has been held to be appropriate where the violation of the right to be present was of limited duration, in contrast to the trial-long violation that occurred in the pending case. *See Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (holding that violation of right to be present is subject to harmless error analysis *"unless* the deprivation, by its very nature cannot be harmless. *See, e.g.,* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)"). *See also* LaFave, § 27.6(d) n. 121 (collecting cases applying harmless error analysis to brief exclusions).

the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial". 420 U.S. at 171, 95 S.Ct. 896. One who is "'mad' ... should not be tried, 'for how can he make his defense?'" *Id., quoting* W. Blackstone Commentaries, *24. The Supreme Court recognizes that the prohibition against trying a mentally incompetent defendant, who, "though physically present in the courtroom, is in reality afforded no opportunity to defend himself ... is fundamental to an adversary system of justice." *Id.* at 171–72, 95 S.Ct. 896. The Court sees little difference between trying a mentally, incompetent defendant and trying a defendant who cannot understand the proceedings against him because he does not understand the language. For Gonzalez, a fundamental component of the adversary system of justice was violated when he was placed on trial with no opportunity to defend himself. Gonzalez's presence in the courtroom may have appeared to be providing him the rights afforded under the Constitution, but such an appearance was simply a facade masking a constitutional violation where Gonzalez had no opportunity to assist in his own defense, and, as he testified at the evidentiary hearing, initially did not even understand he was attending his own trial.

■ Moreover, the Court notes that Gonzalez's inability to understand the proceedings against him implicates Gonzalez's rights under the Confrontation Clause. Gonzalez's Sixth Amendment right to confront the witnesses against him and his right of cross-examination could not have been protected where he could not understand the testimony against him nor assist his attorney in evaluating that testimony.

## VI. *Violation of Right to Confrontation*

Gonzalez raises his entitlement to habeas corpus relief because he was denied his right to confrontation when the trial court limited his cross-examination of Ernesto Galarza.

Ernesto Galarza was originally a co-defendant charged with one count each of conspiracy to deliver and delivery of over 650 grams of cocaine. Galarza testified that he agreed to testify and plead guilty to one count of delivery of between 225 and 649 grams of cocaine "which carries a possible penalty of 20 to 30 years" in exchange for dismissal of the more serious charges. Galarza testified that he discussed with Gonzalez the one kilogram cocaine sale to Stewart and that Gonzalez provided the cocaine. He further testified that Gonzalez delivered the cocaine. Galarza denied carrying the cocaine to Stewart. Galarza testified that Gonzalez was dressed in all white clothing on the day of the cocaine sale and arrests.

Petitioner's attorney attempted to cross-examine Galarza regarding his motives for testifying, including any expectations of leniency he may have harbored. In response to the prosecutor's objection regarding this line of questioning, the trial court entertained an offer of proof outside the presence of the jury. Petitioner's attorney told the trial court judge that he would like to ask Galarza if, because he was testifying on behalf of the prosecution, he had an expectation that he would not be charged as a habitual offender based on his two prior drug convictions, or if he had an expectation that the prosecution would not seek a sentence enhancement based on his prior drug convictions. The trial court judge held that, while defense counsel could explore Galarza's general hopes for leniency, defense counsel would not be permitted to ask specific questions regarding expectations that the prior convictions would not be used to enhance his sentence. The trial court judge reasoned that, because these expectations were not part of the plea agreement, allowing cross-exami-

nation regarding prior specific convictions would violate Michigan Rule of Evidence 609, which governs the admission of prior convictions to impeach a witness.

To determine whether Petitioner is entitled to habeas corpus relief, the Court looks to the last reasoned state court opinion. The Michigan Court of Appeals denied Gonzalez's claim that he was denied his rights to confrontation and due process, holding, in pertinent part:

Defendant first argues that his rights to confrontation and due process were violated because the trial court precluded cross-examination of a key witness, Ernesto Galarza. Whether a trial court has properly limited cross-examination is reviewed for an abuse of discretion. *People v. Minor*, 213 Mich.App. 682, 684, 541 N.W.2d 576 (1995). Moreover, where a defendant claims that the denial of cross-examination has prevented the exploration of a witness' bias, this Court reviews this question for harmless error. *Id.* at 688, 541 N.W.2d 576. The burden of demonstrating its harmlessness rests with the prosecutor. *Id.* at 685, 541 N.W.2d 576. Two inquiries are raised when examining whether an alleged error of constitutional dimension is harmless. First, is the error harmless beyond a reasonable doubt? An error is harmless beyond a reasonable doubt when it has no effect on the verdict. Second, is the error so offensive to the maintenance of sound judicial process that it can never be regarded as harmless? *Id.* at 686, 541 N.W.2d 576. While the scope of proper cross-examination lies within the sound discretion of the court, "the bias or interest of a witness is always a relevant subject of inquiry on cross-examination." *People v. Morton*, 213 Mich.App. 331, 334, 539 N.W.2d 771 (1995). Where a defendant claims that the denial of cross-examination prevented the exploration of a witness' bias, this Court will review this

contention under a harmless error analysis. *Id.* at 336, 539 N.W.2d 771.

Galarza was one of defendant's original co-defendants but entered into plea negotiations with the prosecutor's office before trial. The prosecutor initially elicited that Galarza had entered into a plea agreement with the prosecutor's office. Galarza stated that at the time of trial, he was still charged with conspiracy to deliver 650 grams of cocaine and delivery of cocaine and that after trial, he would plead guilty to delivery of cocaine between 225 grams and 649 grams and the conspiracy charge would be dropped.

Defense counsel attempted to ask Galarza about his past experiences as a witness. He acknowledged that he could not impeach Galarza with the previous drug offenses under M.R.E. 609, [footnote omitted], but stated that he wanted to inquire about whether Galarza's sentence would be enhanced based on his two prior drug convictions. Indicating that it felt that such questioning would result in the circumvention of M.R.E. 609, the court ruled that defendant could not ask Galarza about his two prior drug convictions. The court indicated in this regard:

You may explore on cross-examination whether [Galarza] is looking for leniency in the sense that you may have heard if you were listening at the time the plea agreement was placed on the record that his attorney is in a position to argue for a departure below the minimum. His attorney was not foreclosed from arguing to the Court at the time of sentencing for a departure that would fit into this looking for leniency area, but the enhancement provision in a direct explicit way may not be brought out because it's getting in the back door what you can't get in the front door. You can ask if there

is any other aspect or provision in terms of plea negotiations but not the specifics.

The prosecutor disclosed Galarza's plea agreement during direct examination and later assured the court that no enhancement agreement had been discussed during plea negotiations with Galarza. In addition, defense counsel chose not to cross-examine Galarza at all on the subject of lenient treatment by the prosecutor. Under these circumstances, we are unable to conclude that the trial court erred in its decision to limit the scope of cross-examination in order not to circumvent M.R.E. 609.

Even assuming the trial court erred in curtailing cross-examination, any error should be regarded as harmless in view of the ample evidence pointing to defendant's culpability. The police surveillance team saw defendant transfer the package of drugs to its informant. The informant testified that defendant handed him a kilo of cocaine. Defendant's fingerprints were found on the package containing the cocaine. As a result, the omission of defense counsel's questions into Galarza's potential bias, even if error, appears harmless beyond a reasonable doubt.... The jury could infer from the information elicited on direct that Galarza's "deal" was contingent on his testimony and weigh such testimony accordingly.

*People v. Gonzalez,* slip op. at 1–2.

■ The Sixth Amendment to the Constitution guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him." In determining whether the exclusion of evidence or restrictions on cross-examination infringe upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska,* 415 U.S. 308, 317, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1973). Instead, the question is whether the defendant was afforded " 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), *quoting California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.' " *Id.* at 690–691, 106 S.Ct. 2142 (1984), *quoting United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

In *Davis v. Alaska,* 415 U.S. 308, 317, 94 S.Ct. 1105 (1974), the United States Supreme Court examined whether the trial court's limits on the cross-examination of a key prosecution witness regarding a prior conviction violated the Confrontation Clause.[5] The defendant, in *Davis,* had been convicted of grand larceny and burglary following a trial in which the court prohibited defense counsel from questioning a key prosecution witness, Green, concerning his juvenile record. Green was the sole witness who placed the defendant at the location where the stolen property was later discovered. At the time of trial and at the time of the events regarding which Green testified, Green was on probation by order of a juvenile court after having been adjudicated a delinquent for burglary. The prosecution moved for a protective order prohibiting defense coun-

---

**5.** The Court is mindful of the fact that the Supreme Court reviewed Petitioner's claims in *Davis* on direct review from the state court. Therefore, the Supreme Court's decision in *Davis* instructs the Court as to whether the trial court's exclusion of evidence in the instant case was error. But, as discussed *infra,* the Supreme Court's decisions in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), and its progeny guide the Court in determining whether the error was harmless.

sel from questioning Green regarding his juvenile record. In opposing the motion, defense counsel argued that he would not introduce Green's juvenile record as a means of impeaching Green's general character as a truthful person. Rather, he would introduce such testimony to show that at the time that Green was assisting the police in identifying the defendant, he was on probation for burglary. Defense counsel would then argue to the jury that Green acted out of fear or concern that his probation might be in jeopardy. Green, defense counsel theorized, may have identified defendant as a means of directing suspicion away from himself for a crime similar to the crimes for which he was on probation or he may have suffered undue pressure from the police to make an identification or risk possible probation revocation. *Id.* at 310–311, 94 S.Ct. 1105.

Defense counsel therefore sought to establish the existence of possible bias and prejudice, causing Green to make a faulty identification. The trial court ruled this testimony inadmissible. The Supreme Court held that the exclusion of such testimony denied petitioner his fundamental constitutional right to present a defense:

> [W]e ... conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgement as to the weight to place on Green's testimony which provided 'a crucial link in the proof ... of petitioner's act.' *Douglas v. Alabama,* 380 U.S. at 419, 85 S.Ct. at 1077. The accuracy and truthfulness of Green's testimony were key elements in the State's claim against the petitioner. . . . .
>
> We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green whether he was biased, counsel was unable to make

a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness .... On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross examination which "would be constitutional error of the first magnitude ..."

*Id.* at 317–318, 94 S.Ct. 1105, *quoting Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

█ In deciding to bar cross-examination of Galarza regarding his prior conviction, the trial court reasoned that because an agreement not to seek a sentence enhancement based on the prior conviction was not part of the plea bargain, it was irrelevant to Galarza's testimony. This reasoning misapprehends the importance of allowing a defendant to cross-examine a witness against him in regards to all potential motives for testifying and potential bias. In *Davis,* the Supreme Court allowed that the constitutional right of confrontation extends beyond plea agreements, plea bargains, or other formal agreements with the prosecution.

Galarza's testimony on the issue of who delivered the cocaine was critical to the prosecution's case, but not without contradiction. Galarza identified Gonzalez as having delivered the cocaine. But, numerous witnesses gave testimony that sup-

ported a theory that Galarza or someone else other than Petitioner actually delivered the cocaine. While Galarza testified regarding the formal plea agreement pursuant to which he was testifying, Petitioner, as in *Davis*, was not permitted to explore fully Galarza's motives for testifying as he did. Gonzalez should have been permitted to educate the jury that, through his testimony, Galarza might still be trying to curry favor with the prosecutor's office. Had Petitioner been able to fully cross-examine Galarza, the jury could have concluded that, because Galarza might believe he still had something to gain beyond what was contained in the formal plea agreement, he would have had an even greater incentive to provide testimony to the prosecutor's liking. Gonzalez was therefore denied the opportunity to present to the jury information regarding *all* of Galarza's potential areas of bias.

■ Thus, the Court concludes that the trial court erred in limiting Petitioner's cross-examination of Galarza and that the Michigan Court of Appeals' decision on this issue was an unreasonable application of Supreme Court precedent. Therefore, this Court must decide whether that error was harmless. In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *quoting Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (in-

ternal quotation omitted). See also, *Barker v. Yukins*, 199 F.3d 867 (6th Cir., 1999).

■ As discussed *supra* at ——, while much evidence was presented to support the conclusion that Gonzalez delivered the cocaine to Stewart, much evidence to support the contrary conclusion was also presented. This case involved a complex array of witnesses, many of whom did not witness the actual transfer of drugs to Stewart. Of those that did, disagreement existed as to who transferred the drugs. David Osborn testified that the cocaine was delivered by Galarza, not Gonzalez. Sofia Garcia also testified that Galarza delivered the cocaine. She testified that Gonzalez was dressed all in white on the day of the transaction. Flint Police Officer Antonio Mata testified that he interviewed Galarza twice. In the first interview, Galarza told Officer Mata that Osborn delivered the cocaine to Stewart. In the second interview, Galarza changed his story, telling Officer Mata that Petitioner delivered the cocaine to Stewart. In addition, numerous witnesses gave contradictory testimony as to whether the person who transferred the drugs was wearing light- or dark-colored clothing and whether Gonzalez was wearing light- or dark-colored clothing. Thus, given the complexity of the transaction, the number of witnesses whose testimony potentially was self-interested, and the conflicting accounts as to who actually delivered the cocaine to Stewart, the Court concludes that the trial court's error in limiting cross-examination into the full-extent of Galarza's potential bias "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710. Accordingly, the Court holds that the error was not harmless.

### VII. *Conclusion*

For the foregoing reasons, **IT IS OR-DERED** that a writ of habeas corpus is **GRANTED.** Unless a date for a new trial is scheduled within ninety days, Petitioner Gonzalez must be unconditionally released.